1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT HICKEY, et al.,

                        Plaintiff,

v.

CITY OF SEATTLE,

                        Defendant.

No. C00-1672MJP

ORDER GRANTING PLAINTIFF'S
MOTION FOR CLASS
CERTIFICATION

13

       This case comes before the Court on Plaintiffs' Third Motion for Class Certification. (Dkt.

14 No. 261). The Court has reviewed Defendant's opposition to this motion, Plaintiffs' Reply and both

15 parties' Surreplies to this Motion (Dkt. Nos. 271, 282, 300 & 302), as well as all exhibits and papers

16 submitted in support of the parties' positions. Having also heard oral argument from Plaintiffs and

17 Defendant ("the City"), the Court hereby CERTIFIES a third class in this matter and STRIKES

18 Defendant's late-filed surreply. The City's surreply is struck because it was submitted at

19 approximately 3:35 p.m. on the last business day before oral argument was held in this matter.

20 Regardless of the Defendant's actual intentions in making such a late filing, the Court will not

21 condone such practices because they do not comply with court rules and are disrespectful of both

22 opposing counsel and the Court.

FACTUAL AND PROCEDURAL BACKGROUND

**I. Facts**

       On November 30, 1999, the ministerial conference of the World Trade Organization ("WTO")

convened in Seattle, WA. Dignitaries from 134 member nations, including U.S. President Clinton,

ORDER - 1

came to Seattle to attend the conference. Tens of thousands of protesters also convened in the city to protest the policies and agenda of the WTO.  While many of the protesters who gathered engaged in peaceful demonstrations, a noticeable portion of the protesters engaged in civil disobedience tactics, such as sit-ins at major intersections, designed to disrupt the conference.  Still others employed violent protest strategies such as vandalism, setting fires, and looting businesses near the Convention Center, which housed most of the WTO meetings.

The size and intensity of the protest activities surpassed the ability of the Seattle police force to maintain order. At 3:30 on Tuesday, November 30, 1999, then-Mayor Schell declared a civil emergency. (Defs' Resp. at 7). In response, Governor Locke deployed the national guard. (Id.). Despite these measures, the protests continued and, the City alleges, became even more violent.  In the early morning hours of December 1, 1999, Mayor Schell issued Emergency Order No. 3, which created a restricted zone where protest was prohibited during the course of the WTO convention in the core of downtown Seattle (the "No Protest Zone").  Only WTO delegates and personnel, employees of downtown businesses, residents, and emergency and safety personnel were allowed within the zone.  In practice, the Seattle police also allowed shoppers, city officials, the press, and others with legitimate, non-protest related activities to also enter the "No Protest Zone." (Id. at 8-9), Menotti v. City of Seattle, 409 F. 3d 1113, 1125 ( 9th Cir. 2005).

On the morning of  December 1, 1999, Plaintiffs allege that the Seattle police trapped and arrested a group of approximately 200 people in or near Westlake Park, which was inside the No Protest Zone described by Emergency Order No. 3. Plaintiffs acknowledge that many of the Plaintiffs reached the park through different routes.  Some marched in protest all the way from Denny Park as a group.  Others joined the group once it was in downtown Seattle.  Still others were members of the media, or people who were just at the park.  Plaintiffs state that none of these individuals were engaged in violent protest and that the entire course of events at Westlake Park, including the arrests, took place peacefully. (Pl's Mot. at 2-3). Plaintiffs allege that all of these individuals were arrested without being given a chance to disperse and that the police arrested them without findings of

individualized probable cause.  As they were arrested, Plaintiffs were allegedly loaded onto buses and transported to the Sandpoint Naval Station, where many "were forced to sit on buses for hours without food, water, or sanitation." (Id. at 4). Plaintiffs claim that many of the individuals arrested at Westlake Park were detained for several days. (Id.)

Plaintiffs allege that the Seattle police used generalized, photocopied arrest records that only give a partial and inaccurate account of the event. In support of this allegation, Plaintiffs have submitted arrest records for the named Plaintiffs Kenneth Hankin, Stephanie Lane, and Jennifer Hudziec in this matter.  Each Plaintiff's "Prisoner Identification Form" reads:

> LT WHELAN GAVE ORDERS TO DISBURSE [sic] FROM WESTLAKE PARK ALL REFUSED TO LEAVE AND WERE BLOCKING THE SIDEWALKS. NO PHOTO TAKEN IN FIELD DUE TO NUMBER OF ARRESSTEES [sic] REFUSED TO GET OFF TRANSPORT BUS AT SANDPOINT PRISONER PROCESSING STATION

(Pl's Exs. I-K at 88, 104, and 126).

## II.  Procedural History

This case was originally filed before Judge Rothstein in this Court on October 2, 2000.  This action was filed on behalf of a broad class of people arrested during the enforcement of Emergency Order No. 3 and the No-Protest Zone on December 1, 1999.  Early in the case, Plaintiffs filed a first motion for class certification for a comprehensive class involving all people arrested in the downtown area on that day.  This motion for class certification became moot and was denied after a series of summary judgment rulings by Judge Rothstein. Plaintiffs sought and obtained a certificate of appealability of some of these issues to the Ninth Circuit, which originally denied an interlocutory appeal in this case.

In the meantime, the Plaintiffs sought to certify a second class before Judge Rothstein. This second class included people allegedly "herded" by police into an area around First Avenue and Broad Street, which was outside of the No Protest Zone, and arrested. Plaintiffs Hickey and Jackson were the named Plaintiffs for this second class. The Order certifying the second class also entered

1   final judgment in the cases of five of the original named Plaintiffs (Kenneth Hankin, Jennifer Hudziec,

2   Stephanie Lane, Denise Cooper, and Nicole Pearson), whose entire claims became moot in light of

3   Judge Rothstein's summary judgment rulings.  These five Plaintiffs joined the appeal in the related

4   Menotti v. City of Seattle case (C00-372BJR), which was then before the Ninth Circuit. (Dkt. No.

5   111 at 4).[1]

6       On August 19, 2003, the Hickey case was transferred to Judge Pechman. (Dkt. No. 135).  On

7   December 29, 2003, the Court issued an Order regarding the parties' cross motions for summary

8   judgment as to the second class. (Dkt. No. 184).  In this Order Judge Pechman granted in part and

9   denied in part the parties' motions, finding issues of fact for trial regarding ratification of the police

10  officer's actions by people with final policymaking authority and liability.  On July 15, 2004, Judge

11  Pechman approved a final class settlement as to the second class and dismissed the claims of Hickey

12  and Jackson and the class represented by them. (Dkt. No. 248).

13      On June 2, 2005, the Ninth Circuit issued its opinion in the Menotti case, which affirmed

14  Judge Rothstein's decision regarding the facial constitutionality of Emergency Order No. 3, but

15  remanded the case for further proceedings as to the constitutionality of the order *as applied* to

16  Plaintiffs. Menotti v. City of Seattle, 409 F. 3d 1113, 1148 ( 9th Cir. 2005). While the Ninth Circuit's

17  opinion in Menotti found that Emergency Order No. 3 was a lawful "time, place, and

18  manner"restriction on its face and did not run afoul of the First Amendment, the Ninth Circuit also

19  observed that statements of several individuals, including that of Kenneth Hankin, detained in or near

20  to the No Protest Zone created issues of fact regarding "whether it was the policy of the City to apply

21  Order No. 3 in a manner that excluded only anti-WTO protestors."  409 F. 3d at 1142, 1146-48.

22      The five Plaintiffs from this action requested to have the remainder of their case proceed

23  separately from the remand in the Menotti case, because they claimed that Menotti is much closer to

24

25  _____

26          [1]Judge Rothstein retains the Menotti case.

1   trial than this case. (See Joint Status Report, Dkt. No. 259). On remand, the Plaintiffs ask this Court

2   to certify a class of:

3   > [a]ll individuals arrested on the morning of December 1, 1999, in Seattle, Washington,
   > in Westlake Park or the streets or sidewalks immediately adjacent to the park.

4   (Pl's Mot. at 8). Plaintiffs propose that Kenneth Hankin, Denise Cooper, Jennifer Hudziec, and

5   Stephanie Lane serve as class representatives, should the Court certify this class action. Defendant

6   opposes certification of the class and challenges the proposed class on every prong of the criteria for

7   class certification set forth in Fed. R. Civ. P. 23.  Defendant also challenges the proposed class

8   alleging that there has been insufficient time for discovery, that the class members do not have

9   standing to proceed as a class, and that the proposed class is ill-defined.

10                                      ANALYSIS

11   **I. Discovery Issues & Standing**

12         A.  Discovery

13         When this case was remanded, the parties filed a joint status report indicating that they agreed

14   that a seven-month period of discovery would be appropriate in this matter. (Dkt. No. 259 at 2).

15   However, the Court never entered a scheduling order in this matter after the joint status report was

16   filed. On January 19, 2006, Plaintiffs filed this motion for class certification.  The City maintains that

17   it needs more discovery in this matter and contends that the class certification motion is premature.

18   Fed. R. Civ. P. 23(c)(1) requires the Court to determine, "at an early practicable time" whether to

19   certify an action as a class action.  Nonetheless, pre-certification discovery and rulings on dispositive

20   motions may be appropriate to help focus the case. Federal Judicial Ctr., Manual for Complex

21   Litigation 253 (4th ed. 2004).  Although the Court is deciding to certify the class in this order, the

22   Court will also grant Defendant's request for more time for discovery in this matter.  The Court

23   grants the parties an additional ninety days of discovery in this matter.  This discovery period will be

24   reflected in the scheduling order that will soon issue in this case.  Any extensions of this deadline,

25   whether stipulated or not, must be approved by this Court to be valid.

26         B.  Standing

ORDER - 5

1    Defendant argues that Plaintiffs have no standing to pursue certification of the current class,

2  whose claim rests on alleged violations of the Fourth Amendment by the city of Seattle police,

3  because Plaintiffs abandoned any Fourth Amendment claims early in the litigation. The record of this

4  case is somewhat ambiguous on this matter.  In support of its argument, Defendant cites Docket

5  Number 77, which is a clarification order issued by Judge Rothstein after the first round of summary

6  judgment motions in this matter.  The order states:

7

8         The court did not rule on the lawfulness of police behavior when arresting individuals.
           In fact, the court denied defendants' motion for summary judgment on the issue of
9         probable cause to arrest, because plaintiffs raised issues of fact that precluded
           summary judgment regardless of the constitutionality of Emergency Order No. 3
10         facially or "as applied" through creation of the restricted zone. . .Given that plaintiffs'
           individual claims have not been ruled on, the plaintiffs' request for an order under Fed.
11         R. Civ. Proc. 54(b) is DENIED.

12  (Dkt. No. 77 at 2-3).  At docket number 78, Plaintiffs submitted a supplemental brief on class

13  certification, aimed primarily at clarifying the posture of the case for the Court. In this submission,

14  Plaintiffs state, "[p]ut simply, plaintiffs' only claims for people arrested inside the No Protest Zone

15  were based on the unconstitutionality of Order No. 3 and the No Protest Zone.  After Judge

16  Rothstein's summary judgment order and clarification, plaintiffs have no claims left for these people."

17  (Dkt. No. 78 at 2).  Following this submission, Judge Rothstein denied certification of the first class,

18  but granted a certificate of appealability on the issue of the constitutionality of Emergency Order No.

19  3.  The Ninth Circuit rejected the certificate of appealability and almost a year later, Judge Rothstein

20  reversed her previous position and entered 54(b) judgment as to Plaintiffs Hankin, Hudziec, Pearson,

21  Cooper, and Lane (hereinafter, "the Hankin Plaintiffs") and the class they represented so that they

22  could join the Menotti appeal. (Dkt. No. 111).  Between the entry of that order and now, the Court

23  can find no order on the docket resolving the Fourth Amendment issues of the Hankin Plaintiffs.

24    There appears to be confusion on the part of the parties.  The Hankin Plaintiffs seem to view

25  their Fourth Amendment claims as part and parcel of how Order No. 3 was applied to them.

26

ORDER - 6

1    However, given the Hankin Plaintiffs' previous representations and the Court's reversal of its position

2    to enter judgment, the City's view that Plaintiffs abandoned these claims is not surprising.

3          On May 2, 2006, the parties stipulated to the entry of Plaintiff's Second Amended Class

4    Action Complaint (Dkt. No. 296). Paragraph 102(b) of this Complaint specifically puts at issue,

5    "whether the arrests of plaintiffs and the Class while physically within one of the City's declared

6    curfew zones or 'no protest' zones violated the federal First and Fourth Amendment rights of

7    plaintiffs and the Class." (Id. at 27). Although this issue is not exactly the same as the issue remanded

8    to this Court by the Ninth Circuit, whether or not the Seattle City police were violating the Fourth

9    Amendment rights of people they perceived to be WTO-protesters is a pertinent inquiry for the Court

10   because these issues were originally brought before the Court when this action commenced, but have

11   not been resolved. Additionally, as evidenced by the Ninth Circuit's discussion of Plaintiff Hankin's

12   declaration, these issues are related to the mandate given to this Court by the Ninth Circuit. Menotti,

13   409 F. 3d at 1146-47. For these reasons, the Court will allow Plaintiffs to proceed as a class with

14   their Fourth Amendment claims against Defendant.

15   **II.  Is the Proposed Class Well-Defined?**

16         Before launching into its challenge to Plaintiffs' proposed class certification under Fed. R.

17   Civ. P. 23, the City objects to the class on the grounds that it is ill-defined.  Defendant claims that

18   Plaintiffs' proposed class definition is too broad and ambiguous and that it will be difficult to identify

19   who is a member of the class.

20         Plaintiffs' proposed class definition reads: "[a]ll individuals arrested on the morning of

21   December 1, 1999, in Seattle, Washington, in Westlake Park or the streets or sidewalks immediately

22   adjacent to the park." (Pl's Mot. at 8).

23         Defendant objects to this definition because: 1) the word "arrest" is too vague; 2) the word

24   "morning" is also ambiguous; and 3) the use of the phrase "in Westlake Park or the streets or

25   sidewalks immediately adjacent to the park" is too loose.  The Court agrees with Defendant that the

26

1    use of the word "morning" and the geographical boundaries for the arrests could be more well-

2    defined.  However, the City's objection to the use of the word "arrest" is meritless.

3         Federal defendants in the Chang v. United States case made a similar argument, stating that

4    the court would have to make individualized findings regarding the circumstances of each class

5    members' arrest that would undermine the representative purpose of the class action. 217 F.R.D. 262,

6    270 (D.D.C. 2003). The court in Chang dismissed that argument, observing that the arrests in

7    question resulted from a mass arrest action on the part of the police, who were trying to quell a

8    protest. Id.. The Chang court noted the overriding factual and legal similarities of the cases of the

9    Plaintiffs before it and analogized the case to the Dellums case, which certified a class of "all persons

10   who were arrested while assembled on the Capitol steps on May 5, 1971" in protest of the Vietnam

11   War. See Dellums v. Powell, 566 F. 2d 167 (D.C. Cir.1977). Other courts have also followed this

12   rationale, finding that in cases of mass arrest or detention, plaintiffs' factual and legal claims were

13   sufficiently similar to justify certification of a class, despite alleged individualized defenses to these

14   claims.  See e.g. Patrykus v. Gomilla, 121 F.R.D. 357 (N.D. IL 1988); Johns v. DeLeonardis, 145

15   F.R.D. 480 (N.D. IL 1992).  Plaintiffs also observe that the fact of each individual Plaintiff's arrest

16   can be shown via the arrest records for these people. (See Weaver Decl.,  Ex. D).   Regarding

17   Defendant's objections to the use of the word "morning" and the non-specific geographic boundaries

18   in the class definition, the Court agrees with the City that the vagueness of these terms could pose

19   problems for this litigation as this case progresses.  However, these flaws are not fatal to class

20   certification because they are problems that are easily corrected.  Almost all of the arrest records

21   submitted in support of this motion by Plaintiffs indicate an arrest time of 9:00 a.m. (Weaver Decl.,

22   Exs. E-G, I-L, O-X).  The only exceptions are the arrest records of Dana Schuerholtz and Abraham

23   Haim, which indicate an arrest time of 7:40 a.m. (Id., Ex. C, Haim Decl.). While there is evidence that

24   the arrest records are not completely accurate (See Haim Decl., ¶14), a twelve hour window for

25   arrests seems broader than necessary.  Accordingly, the Court will certify a class of people arrested

26   between 6 a.m. and 12 p.m. on December 1, 1999, in Westlake Park.  Similarly, Plaintiffs indicate in

their Reply that they could easily designate the streets that border Westlake Park.  In the interest of

making the class members as easily identifiable as possible, the Court will certify a class of

> *all individuals arrested between 6 a.m. and 12 p.m. on December 1, 1999, in Seattle, Washington, in Westlake Park, or on the streets or sidewalks on Fourth Avenue, between Pike Street and Pine Street, or on Pike or Pine Streets between Fourth and Fifth Avenues.*

**III.  Fed. R. Civ. P. 23(a)**

Under Fed. R. Civ. P. 23(a) Plaintiffs must show that the proposed class meets the

prerequisites of (a) numerosity, (b) commonality, (c) typicality, and (d) adequacy of representation.

E.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).  Failure to adequately fulfill any of

Rule 23's requirements will preclude certification of a proposed class action.  Rutledge v. Electric

Hose & Rubber Co., 511 F. 2d 668, 673 (9th Cir. 1975).  The parties seeking certification bear the

burden of demonstrating that all of the requisites set forth in Fed. R. Civ. P. 23 have been met.

Chang, 217 F.R.D. at 268.

A.  Numerosity

A proposed class meets the numerosity requirement if "the class is so numerous that joinder of

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs argue that with a proposed

class of between 128- 200 individuals, numerosity is not an issue in this case.  Defendants, however,

argue that the issue of numerosity is not necessarily an easy issue for Plaintiffs because they have not

demonstrated that joinder of all Plaintiffs is impracticable.

While there are cases where a court has declined to certify a large class because Plaintiffs have

not demonstrated impracticability of joinder, there is much more precedent supporting the notion that

actions involving of hundreds of plaintiffs are sufficiently numerous to be certified as a class.  See e.g.

Chang, 217 F.R.D. at 269 (citing Franklin v. Barry, 909 F. Supp. 21, 30 (D.D.C. 1995), which held

that a class of 200 satisfied the numerosity requirement). Additionally, Plaintiffs have asserted that

some of the individuals involved in the arrest at Westlake Park have moved out of state, or even out

of the country, since this litigation was originally filed. (Am. Compl. at 4-5). Given the strong

precedent in this area and Plaintiffs' claim that some members of the class have relocated, the Court

finds that the proposed class is sufficiently numerous for certification and that joinder of all of the Plaintiffs in this action would be impracticable.

     B. Commonality

     The commonality requirement is satisfied "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). Defendants claim that Plaintiffs do not fulfill the commonality requirement because "each class member's claims necessitate individual determinations of liability." (Def's Resp. At 19). However, "'[t]he commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" Chang, 217 F.R.D. at 269. Here, all of the Plaintiffs were allegedly scooped up by the police in a mass arrest, without an individualized probable cause determination as to each Plaintiff. Although Defendants are correct that probable cause determinations are normally individualized processes that are inappropriate for representative adjudication, other courts have certified classes of protesters swept up in mass arrests. Id. at 274; Dellums v. Powell, 566 F. 2d 167 (1977). Additionally, the Southern District of New York certified a class of people who had been allegedly strip searched pursuant to an indiscriminate strip search policy of all potential inmates. Maneely v. City of Newburgh, 208 F.R.D. 69 (2002). Although the Maneely court acknowledged that there would be some individual issues regarding reasonable suspicion under the Fourth Amendment, the court found that these issues could be dealt with individually at the damages stage of that litigation. Id. at 78-79. The Maneely court found it efficient to certify a class to resolve the issue of whether or not a policy existed that mandated indiscriminate strip searches and that the efficacy of resolving this issue en masse trumped any difficulties that might arise because of individual reasonable suspicion determination.

     This case is analogous because Plaintiffs will have to show that the Seattle police acted pursuant to a policy or that a decision maker ratified the actions of the arresting police officers in order to demonstrate the liability of the municipal government of Seattle. See Christie v. Iopa, 176 F. 3d 1231, 1235-41 (9th Cir. 1999). The common factual allegations surrounding each Plaintiff's arrest,

1    as well as these common legal issues justify a finding on the part of this Court that Plaintiffs have

2    satisfied the commonality inquiry.

3           C.  Typicality

4           The Court may find typicality if "the claims or defenses of the representative parties are

5    typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit has held

6    that Rule 23(a)(3) should be interpreted somewhat permissively and that "representative claims are

7    'typical' if the are reasonably co-extensive with those of the absent class members; they need not be

8    substantially identical." Hanlon v. Chrysler Corp., 150 F. 3d 1011, 1020 (9th Cir. 1997).

9           Given this permissive standard, and the affidavits submitted by the named and unnamed

10   Plaintiffs in this action, typicality is met.  Plaintiffs Hudziec, Cooper and Hankin arrived at Westlake

11   Park from Denny Park, while Plaintiff Lane states that she joined the protest downtown.  Plaintiffs

12   Haim's and Worden's affidavits seem to support the fact that the named Plaintiff's experiences were

13   similar to those of other, unnamed Plaintiffs.  In addition to the typicality of their factual situations,

14   the named Plaintiffs legal claims and Defendants defenses to these claims appear to be similar to those

15   of the rest of the class.  For these reasons, the Court finds that the typicality prong is satisfied.   D.

16   Adequacy of Representation

17          The fourth and final prong of Rule 23(a) requires that "the representative parties will fairly

18   and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In order to satisfy this

19   prong, the Plaintiffs must show that the named Plaintiffs do not have any conflicts of interest with

20   other class members.  Additionally, the Court must examine whether the named Plaintiffs and counsel

21   will vigorously prosecute the case. Hanlon, 150 F. 3d at 1020.  Here, Defendants make a flat

22   statement that Plaintiffs have not demonstrated this prong of the class certification analysis, but

23   provide no support for this statement. (Def's Resp. at 21).  Plaintiffs claim that the class

24   representatives' interests are entirely coincident with that of other class members. (Pl's Mot. at 14).

25   Additionally, they note that Judge Rothstein already found counsel in this matter to be adequate

26   professional representatives. (See Dkt. No. 111).  The Hagens Berman law firm representing

Plaintiffs in this matter has experience representing complex class actions.  Additionally, Defendants

have raised no serious challenges regarding any conflicts of interest that named Plaintiffs may have.

The Court finds that the adequacy of representation prong is satisfied.

**IV. Fed. R. Civ. P. 23(b)**

In addition to meeting the requirements set forth in Fed. R. Civ. P. 23(a), Plaintiffs must also

demonstrate that the class can be maintained under the requirements of either Fed. R. Civ. P.

23(b)(1), (2), or (3). Hanlon, 150 F. 3d. at 1022.  The Plaintiffs in this case claim that this action

satisfies the requisites of Rule 23(b)(3).

A.  Predominance and Superiority

Under Fed. R. Civ. P. 23(b)(3), the Court must determine "whether the proposed class[. ..]

[is] sufficiently cohesive to warrant adjudication by representation." Id., 150 F. 3d at 1022 (citing

Amchem, 521 U.S. at 623). To make this decision, the Court must find that, "the questions of law or

fact common to the members of the class predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b)(3). The Court must also make a finding that a class action is

"superior to other available methods for the fair and efficient adjudication of the controversy." Id.  In

making these findings, the Court must consider four factors: 1) the interest individual members of the

class may have in controlling their own actions, rather than proceeding as part of a class; 2) whether

or not any members of the proposed class have already engaged in related litigation; 3) the

appropriateness of the chosen forum; and 4) difficulties in managing the proposed class.  Id.

The Court has already ruled that the claims set forth by the Hankin Plaintiffs in this case

satisfy the commonality prong of Fed. R. Civ. P. 23(b).  However, commonality alone will not satisfy

the predominance inquiry.  Hanlon, 150 F.3d at 1022.  Instead, the predominance inquiry looks to the

relationship between the common claims and individual issues. Id. "'When common questions present

a significant aspect of the case and they can be resolved for all members of the class in a single

adjudication, there is a clear justification for handling the dispute on a representative basis.'" Id.,

1    quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure
2    §1778 (2d ed. 1986).

3          As stated before, Defendants claim that individual issues surrounding the probable cause
4    determination and the legality of Plaintiffs' arrests will predominate over the common issues in this
5    action and make it unmanageable.  Based on case examples to which this Court has referred, supra,
6    unwieldy individual claims need not dominate the case if it is structured properly.  For this reason, in
7    the scheduling order that will follow this Order, the Court will bifurcate this action.  In the first stage
8    of the litigation, the Court will examine whether or not there was a policy or action ratified by a
9    qualified Seattle government decision maker that makes liability imputable to the municipal
10   Defendants in this matter.  In the first stage, the Court will also determine the common facts of
11   Plaintiffs' arrests, if such common facts exist.  These are determinations that should be made
12   uniformly in the case of each Plaintiff and making them within the vehicle of the class action serves
13   the interests of judicial economy.  If this action survives to the second stage of the litigation, the
14   Court will then make individualized damages determinations regarding whether or not each
15   individual's rights were actually violated on December 1, 1999, and to what extent.  See e.g.
16   Maneely, 208 F.R.D. 69.

17         Having addressed the issues that Defendants raise, the Court will also address the four factors
18   set forth in Fed. R. Civ. P. 23(b)(3).  In this matter, Plaintiffs will likely be more interested in
19   pursuing this matter as a class, rather than individually, because the damages in this case will likely
20   not be high enough to warrant each individual pursuing a case on his or her own.  Second, there have
21   been several other permutations of the WTO litigation, in addition to this matter and the Menotti
22   case.  Because Plaintiffs have been tied up in this litigation since 2000, they may have missed their
23   chance to join other cases and this Court should hear these Plaintiffs' claims.  Regarding the
24   appropriateness of the forum, the Western District of Washington is appropriate because it is where
25   the events occurred, it is the locus of the Seattle municipal government, and many Plaintiffs still reside
26   here.  Additionally, this case has been proceeding in this Court since 2000.  Finally, as to the

ORDER - 13

difficulties in class management, these challenges can be addressed by allowing more discovery early on in this case, so that the validity of named Plaintiffs' cases can be evaluated, and by bifurcating the trial in this case so that common issues are addressed in the liability stage and individual issues are addressed in the damages stage.  Having considered Defendants objections to class certification, as well as the four areas for inquiry under 23(b)(3), this Court finds that the proposed class action satisfies both the predominance and superiority requirements.

CONCLUSION

The Court hereby CERTIFIES a third class in this matter to include:

> all individuals arrested between 6 a.m. and 12 p.m. on December 1, 1999, in Seattle, Washington, in Westlake Park, or on the streets or sidewalks on Fourth Avenue, between Pike Street and Pine Street, or on Pike or Pine Streets between Fourth and Fifth Avenues.

The Court will grant an additional ninety days of discovery in this matter.  This case shall be bifurcated.  The liability stage of this case shall proceed first.  During the first stage, the Court will also determine if any common facts exist regarding Plaintiffs' arrests.  If the case survives, then the Court will address the damages issues as to each individual Plaintiff separately.  A scheduling order will follow that reflects these decisions.  The parties should not agree to modify this scheduling order without approval by the Court.  Finally, the Court STRIKES Defendant's late-filed surreply for being out of conformity with the local rules.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 5th day of June, 2006.

Marsha J. Pechman
United States District Judge

ORDER - 14